IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>SASHA JAMECE PHILLIPS,<br><br>                              Defendant. | Case No. 26-CR-004-JFH |

**OPINION AND ORDER**

Before the Court is a motion to revoke the order for Defendant Sasha Jamece Phillips' pretrial release ("Motion") filed by the United States of America ("Government"). Dkt. No. 20. The United States Magistrate Judge ordered Defendant conditionally released on January 6, 2026. Dkt. No. 19. That order is currently stayed pending resolution of the instant Motion. Dkt. No. 23. For the reasons set forth below, the Government's Motion is GRANTED.

**BACKGROUND**

Defendant is indicted on a single count of Eluding a Law Enforcement Officer While Endangering Others in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 13, and 21 O.S. § 540A(A) and (B). Dkt. No. 13. The Government previously filed a motion requesting pretrial detention, asserting that Defendant posed both a serious risk of flight and danger to the community if released. Dkt. No. 3. The motion was denied at a detention hearing held before the Magistrate Judge on January 6, 2026 [Dkt. No. 17], and Defendant was ordered released subject to an unsecured bond of $10,000 as well as other pretrial conditions, including a restriction against driving, a curfew, and substance monitoring [Dkt. No. 19]. The release order additionally requires Defendant to participate in a program for drug and alcohol abuse and specifies that she is to be held in custody until a bed becomes available for her at a treatment facility. Dkt. No. 19 at 2, 5.

At the detention hearing, the Government admitted what has since been filed as Exhibit 1 of its Motion. Dkt. No. 26 at 3:13-25, 4:1-8; *see also* Dkt. No. 20 at 5; Dkt. No. 21. Shown in the exhibit is footage captured by Tulsa Police Department Officer Phillip Johnston's dash camera during the high-speed chase leading up to Defendant's arrest. The recording—together with the Government's proffered testimony of FBI Special Agent Crist Lister [Dkt. No. 26 at 4:11-25, 5:1-21]—show that, at or around 9:35 p.m. on Saturday, December 20, 2025, Officer Johnston attempted stop Defendant's vehicle after observing her travel at rate of between fifteen and twenty miles per hour over the 35-mile-an-hour posted limit. Officer Johnston initiates his lights and siren, and Defendant's vehicle begins to slow and signal as if to pull over. However, Defendant then swerves around a stopped passerby vehicle, speeds off down the road, and turns into a residential neighborhood. With Officer Johnston still in pursuit, Defendant races through the neighborhood at nearly fifty miles per hour, avoiding parked vehicles on either side of the road, and crashes at the end of the street. As Officer Johnston approaches and exits his vehicle, Defendant reverses and collides with his marked patrol car only to speed off again into the neighborhood. Defendant then exits the neighborhood, running a stop sign into oncoming traffic, and increases her rate of speed to more than 100 miles per hour. She continues for roughly half a mile, swerving in between traffic and colliding with two additional vehicles along the way. Once her vehicle becomes inoperable, Defendant opens the door and exits while it is still in motion then proceeds to flee on foot. Finally, after officers chase her down and tase her, Defendant is arrested. Officers smell alcohol on her person and locate marijuana inside of her vehicle. Her toxicology results are still pending. Dkt. No. 26 at 5:18-21; Dkt. No. 20 at 2.

After describing the offense conduct, the Government asked the Magistrate Judge to take judicial notice of the pretrial services report outlining Defendant's criminal history. Dkt. No. 26

at 5:22-24. According to the report, the Government states that Defendant has had more than several failures to appear for court proceedings in the past, with numerous instances in the last two years alone. *Id.* at 8:15-22. The charges against her have included speeding at a rate of 26-30 miles per hour above the posted limit, operating a vehicle without a license, repeatedly driving while under suspension, and leaving the scene of an accident involving damage to a vehicle. *Id.* at 8:18-25, 9:1-2. Of particular concern to the Magistrate Judge was Defendant's history of persistently driving without a valid license. *Id.* at 13:1-3 ("[Defendant] gets these citations and continues to drive without a license over and over and over and over again."). In total, the Magistrate Judge counted "either 10 or 11" charges against Defendant for driving with a license that had previously denied, suspended, or revoked. *Id.* at 11:2-6.

In responding to the Government's arguments, counsel notes that Defendant has never been convicted of a drug-related or violent crime nor alleged to have ever threatened anyone with a gun or weapon.[1] *Id.* at 10:10-21. Rather, counsel asserts that "[t]he allegations in this case are indicative of somebody who is struggling with . . . an alcohol addiction" and suggests that "treatment would be a condition that would alleviate concerns about danger to the community." *Id.* at 10:12-16. Defendant proffered testimony from family members who claim she has strong ties to the community and has lived in Oklahoma nearly her entire life. *Id.* at 6:4-5. Defendant maintains custody of two of her children and is employed as a certified nursing assistant at a nursing home. *Id.* at 6:11-24. Her family members would also testify that her alcohol abuse began to "spiral" following the death of her mother in 2022. *Id.* at 16:3-5. Still, counsel maintains that Defendant "has been forthcoming with the court and probation about her alcohol abuse" and is both "interested and eager to get treatment." *Id.* at 7:17-21.

---

[1] The pretrial services report prepared by the Probation Office does note, however, that Defendant was arrested in 2018 for domestic battery, though no record exists of charges being filed.

Coupled with the strong weight of the evidence against Defendant and the endangerment of public safety demonstrated in the offense conduct, the Magistrate Judge remarked that the determination of Defendant's pretrial disposition was "a close call." *Id.* at 16:1, 17:16-22. Ultimately, she concurred with the Probation Office's recommendation and ordered Defendant released with the added condition of GPS monitoring. *Id.* at 18:24-25, 19:1-3. In rendering her decision, the Magistrate Judge emphasized the need for Defendant's alcohol abuse to be addressed and the fact that she has not received any treatment in the past. *Id.* at 20:12-14, 24:18-22.

In its Motion, the Government reasserts its claim that Defendant is a flight risk and danger to the community. Dkt. No. 20. Specifically, it argues that the willful disregard for the safety of others displayed in the offense conduct and Defendant's criminal history together satisfy the requirements for pretrial detention under 18 U.S.C. § 3142(g). *Id.* at 5-9. To summarize the criminal history noted in the pretrial services report and outlined in the Government's Motion, within roughly the last decade, Defendant has been named in twenty traffic-related cases and incurred a total of 26 separate charges. *See id.* at 2-4. To date, she has been convicted of ten of those charges, including the aforementioned speeding charge, obstruction of a law enforcement officer, and six counts of driving either without a license or while under suspension. *Id.* at 3. The remaining charges are all still pending and include another speeding citation; two counts for leaving the scene of an accident involving damage to a vehicle in both July 2022 and April 2024; ten more counts of driving with a license that has been cancelled, denied, suspended, or revoked; and, finally, dual charges for driving while both intoxicated and with an open container of alcohol in the vehicle. *Id.* at 3-4. Nearly all of these charges remain pending solely on account of Defendant's failure to appear in court. In total, Defendant has failed to appear for hearings on six separate occasions, with her two most recent absences having occurred this past November. *Id.*

Consequently, numerous bench warrants have been issued for her arrest based on her failure to appear in court, twelve of which were outstanding on the date of her arrest. *Id.* at 3-4, 7-8.

In her response to the Government's Motion, Defendant also reiterates many of the same arguments previously made before the Magistrate Judge. Dkt. No. 27. Counsel asserts that "[t]he only evidence offered by the government regarding risk of flight is [Defendant's] prior failures to appear for traffic violations," adding that "[i]t is unclear whether Ms. Phillips even received notice of her court dates in those cases." *Id.* at 9. She also claims that Defendant has never attempted to flee the state to avoid court dates and that "her father represented that he would ensure . . . [she] makes it to her court hearings." *Id.* Regarding the alleged danger Defendant's release poses to the public, counsel argues that the Government has based its assessment exclusively on the charges in this case and emphasizes that Defendant "must be afforded the presumption of innocence on the allegations." *Id.* at 12. In any case, she contends that "[t]he investigation of this case shows that Ms. Phillips was not threatening anyone" and that "[n]one of the other drivers were hurt in the vehicle collisions."[2] *Id.* at 13. Finally, counsel asserts that the conditions of release imposed by the Magistrate Judge—which in passing she deems may be "questionable" as to whether or not the "least restrictive" required under 18 U.S.C. § 3142(c)(1)(B) [*id.* at 14]—will nevertheless "reasonably assure community safety" while Defendant is on release. *Id.* at 13.

---

[2] On this point, Counsel adds that the footage submitted by the Government "shows that Ms. Phillips was using her turn signal while driving which," she claims, "not only let officers know where she was going, but it also signaled to other drivers on the road so her movements could be anticipated." *Id.* at 13. The Court has noted Defendant's turn signal usage throughout the video, including in the early moments of the chase when Defendant signals right as if about to pull over but then abruptly swerves around another driver back into the left lane with her right signal still engaged. Improper usage aside, it is a stretch to claim that Defendant's signaling was intended for purposes of safety when, meanwhile, Defendant was actively leading law enforcement on a high-speed chase through a neighborhood and down a crowded roadway at 9:30 p.m. on a Saturday.

## STANDARD

While under the presumption of innocence, an individual's right to liberty can only give way to the greater needs of society upon a showing of sufficiently weighty government interests. *United States v. Salerno*, 481 U.S. 739, 750-51 (1987); *cf.* 18 U.S.C. § 3142(j) ("Nothing in this section shall be construed as modifying or limiting the presumption of innocence."). To hold a defendant in custody for the pendency of trial, the Government must prove either by preponderance of the evidence that the defendant is a serious flight risk or by clear and convincing evidence that pretrial release poses a threat to the safety of others. *See United States v. Cisneros*, 328 F.3d 610, 616 (10th Cir. 2003). In turn, the Bail Reform Act of 1984 requires the judicial officer to find "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Each of the following factors must be considered in making this determination:

(1) The nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;

(2) The weight of the evidence against the person;

(3) The history and characteristic of the person, including–

   a. The person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

   b. Whether, at the time of the current offense, or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal or completion of sentence for an offense under Federal, State, or local law; and

(4) The nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

"If a person is ordered released by a magistrate judge . . . the attorney for the government may file, with the court having original jurisdiction over the offense, a motion for revocation of the order or amendment of the conditions of release[.]" 18 U.S.C. 3145(a). In such cases, the reviewing court must conduct a *de novo* review of the magistrate judge's decision to release the defendant. *Cisneros*, 328 F.3d at 616 n.1. Particularly, "the district court is charged with making 'an independent determination of the proper pretrial detention or conditions for release'" based on the four factors provided under 18 U.S.C. § 3142(g). *United States v. Garcia*, 445 F. App'x 105, 108 (10th Cir. 2011) (unpublished) (quoting *Cisneros*, 328 F.3d at 616 n.1).

## ANALYSIS

In this case, the Court finds that all four § 3142(g) factors weigh in favor of pretrial detention and that there are no conditions which would reasonably assure Defendant's appearance at future proceedings or protect the public from further danger were she to be released.

The weight of the evidence against Defendant is overwhelming. Not only is the offense conduct entirely captured on video, but it also clearly demonstrates the threat that Defendant poses to public safety. For roughly three minutes, Defendant is shown to have led law enforcement on a high-speed chase down both sides of a crowded metropolitan boulevard and throughout the narrow residential streets of an adjacent neighborhood, at times reaching speeds of more than 100 miles per hour. After her first collision, Defendant backed into the pursuing officer's patrol car while the officer was standing just a few feet away. She later crashed into two civilian vehicles before ultimately attempting to flee on foot. All told, it is miraculous that no one was seriously injured in the ordeal. While Defendant asserts that she has never threatened anyone with a weapon or gun, the same cannot be said of her threatening others with a motor vehicle. With Defendant's

blood test results still pending, the Court struggles to find any comfort in the idea of her having committed these acts while sober.

It is true that Defendant is not accused of a crime of violence, per se. However, "[t]he concern about safety is to be given a broader construction than the mere danger of physical violence. Safety of the community refers to the danger that the defendant might engage in criminal activity to the detriment of the community." *United States v. Cook*, 880 F.2d 1158, 1161 (10th Cir. 1989). In this case, the construction needs little broadening. While Defendant may not have intended to harm anyone, her actions no doubt put the safety of numerous others at risk, and there are no conditions that would satisfy the Court's concerns as to the danger she continues to pose to the safety of the community. Even with orders to abstain from operating a motor vehicle, there is little assurance Defendant would comply. Defendant's history and characteristics prove especially insightful in this regard. She has already had her license either cancelled, suspended, or revoked and nevertheless continued to drive on countless occasions. With six convictions and ten unresolved charges for driving without a license or while under suspension, there is no indication Defendant will stop driving simply by virtue of new orders not to do so.

Defendant's history and characteristics are also telling in two more respects. The first is concerning the level of danger she poses to public safety if released. As documented above, Defendant's criminal history is not exclusively composed of mere citations for driving without a valid license. Rather, she has already been convicted in state court for obstructing an officer and speeding at 26-30 miles per hour above the posted limit. Of greater concern are the charges still pending against her in tribal courts, particularly the two hit-and-runs and DUI. Overall, Defendant's criminal history leaves no doubt that she is particularly dangerous when behind the wheel of an automobile, and the fact that her alcohol addiction is believed to have spiraled within

8

the last few years only serves to exacerbate the Court's concern. The stress of being charged in federal court is unlikely to alleviate any of her underlying substance abuse issues, and there is no guarantee that her admission into treatment would be successful. Second, Defendant's criminal history demonstrates a pattern of neglect for court-ordered appearances. Defense counsel attempts to mitigate the significance of Defendant's prior failures to appear by noting that they have all occurred within roughly the last two years and coincide with her worsening alcohol addiction. Dkt. No. 26 at 11:16-20, 12:9-12 (suggesting that "Ms. Phillips has been having a hard time for the last few years and somebody who has an alcohol addiction may overlook dates [or] may not remember to check their mail"). However, this information is also of little solace. Indeed, quite the opposite. That Defendant has demonstrated a pattern of disregard or neglect for court-ordered appearances which is perhaps becoming increasingly exacerbated due to worsening alcohol addiction simply reinforces the Government's argument that she poses a significant flight risk. While Defendant criticizes the Government for its focus on her past failures to appear, that aspect of Defendant's background is explicitly listed as a subfactor under the § 3142(g) analysis. 18 U.S.C. § 3142(g)(3)(A) (providing that courts must consider "the history and characteristics of the person, including . . . the person's . . . record concerning appearance at court proceedings").

Although Defendant has professed to having a drinking problem and indicated she is willing to receive treatment [Dkt. No. 26 at 7:17-21], frankly, it is hard to imagine why anyone in her position would have stated otherwise. Regardless of one's actual determination to rid themselves of a drug or alcohol abuse problem, there is hardly a choice to be made when given the option of either pretrial detention or release into the community premised upon receiving treatment. Defendant's statements may have been genuine, but the potential cost of giving her the benefit of the doubt is too high. Ultimately, everything would ride on her success in treatment, and

if that proved unsuccessful, the only reasonable inference to made based upon the record is that Defendant's most likely trajectory would be a continued downward spiral towards more drinking, more driving, and further neglect for the law. Even with GPS monitoring, there can be no assurance that a response could be carried out in time to prevent Defendant from injuring herself and others were she to slip up even once. Public safety is simply far too vital an interest to stake on bare hope and promises.

## CONCLUSION

Upon consideration of the available information and in light of the factors set forth under 18 U.S.C. § 3142(g), the Court finds by a preponderance of the evidence that there are no conditions to adequately assure Defendant's appearance at future proceedings were she to be released from custody pending trial. The Government has also shown by clear and convincing evidence that Defendant's release into the community poses an inexorable threat to the safety of the public. Defendant has an extensive track record of neglect for court-ordered appearances and has continued to incur numerous traffic violations even after being ordered not to drive with the suspension of her license. There is no indication that she will turn a new leaf simply on account of being given new orders by a different court. Although the crime charged in this case does not and cannot form the sole basis of the Court's decision on this matter, its verbiage is telling: Defendant is charged with evading law enforcement while endangering others. There is every indication she will continue to do the same if released.

IT IS THEREFORE ORDERED that the Government's motion to revoke the order setting Defendant's conditions of release [Dkt. No. 20] is GRANTED. The Order Setting Conditions of Release [Dkt. No. 19] is hereby REVOKED.

IT IS FURTHER ORDERED that Defendant Sasha Jamece Phillips shall be detained pending trial and is hereby committed to the custody of the Attorney General or to a designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel. Upon order of a court of the United States or request of an attorney for the Government, the person in charge of the corrections facility in which Defendant is held shall deliver Defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated this 16th day of January 2026.

JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE